THOMPSON *et al.* v. McKEE.

No. 2993.    Opinion Filed July 14, 1914.

Rehearing Denied August 25, 1914.

(142 Pac. 755.)

FRAUDS, STATUTE OF—Real Estate Partnership—Evidence of Interest. An oral partnership agreement to share in the profits and lossess arising from the purchase and sale of real estate is not within the statute of frauds; and the existince of such partnership, and the interest of the members of the firm therein, may be established by parol evidence.

(Syllabus by the Court.)

*Error from Superior Court, Oklahoma County;*
*E. D. Oldfield, Judge.*

Action by W. A. McKee against W. J. Thompson and H. F. Carter. Judgment for plaintiff, and defendants bring error. Modified and remanded.

*S. A. Horton,* for plaintiff in error.

*Warren K. Snyder* and *P. E. Winter,* for defendant in error.

BLEAKMORE, J.  This is an action brought in the court below by defendant in error, as plaintiff, against the plaintiffs in error, as defendants, for the dissolution of a partnership entered

into for the purpose of dealing in lands, and for an accounting. The parties are referred to here as they appeared in the trial court.

The cause was submitted to the court and a jury, to which jury interrogatories were propounded and answered as follows:

"Interrogatory No. 1. Was there ever a partnership contract or agreement entered into by and between the plaintiff and defendants, by the terms of which the plaintiff and defendants were to be equal partners for the general buying and selling of real estate for profit? If so, give the date of such agreement. Answer: Yes, early part of March. Interrogatory No. 2. Was there a partnership contract or agreement entered into for the purchase of this particular land, to wit, the northeast quarter of section 15, in township 12, north of range 3 west of the Indian meridian, known as the Gardner tract, and, if so, give the date of such agreement. Answer: Early part of May, 1908. Interrogatory No. 3. If you answer interrogatory No. 1 in the affirmative, that is (that there was a partnership agreement for the general buying and selling of real estate for profit), then state whether or not such partnership was ever dissolved by mutual consent, or otherwise, and, if it was dissolved, give the date of the dissolution. Answer: No."

The court adopted the findings of the jury, and adjudged that a partnership existed between the parties, and—

"that the said real estate cost, as returned by the jury, $16,000; that the present value of the real estate was $37,280, and that the net interest of the plaintiff, W. A. McKee, was and is $5,000; that the said real estate, if the judgment herein rendered is not paid off, discharged, or satisfied by the defendant Thompson within 60 days of this date by the payment to the plaintiff, McKee, by the defendant Thompson, of the sum of $5,000, the amount returned and found by the jury to be McKee's net interest in said real estate, then upon failure of said defendant Thompson to pay off the said $5,000, together with the costs of action, within 60 days, then that execution issue by the clerk of the court under seal to the sheriff, commanding him to advertise and sell said real estate after appraisement, and to return the proceeds of the same into court for the purpose of satisfying this judgment. It is further adjudged that if the defendant, Thompson shall pay or cause to be paid said $5,000 within 60 days, for the use and benefit of the plaintiff, McKee, to the clerk of the court, then and in that event the judgment herein rendered shall be fully satisfied."

The facts as disclosed by the record, the special findings of the jury adopted by the court, and the decree are that the plaintiff and defendants, who for some time prior thereto had been partners in the real estate business, buying and selling lands for profit, in the month of May, 1908, entered into a parol agreement among themselves for the purchase and sale of the particular land described in the complaint, each to share equally in the profits or losses upon a disposition thereof; that the land was bought for $16,000, the defendant Thompson advancing the whole of the purchase price and taking title to the same in his own name; that the land increased in value, and at the time of the trial was worth $37,280; that prior to the institution of this action the defendant Carter had conveyed his share in the profits arising by reason of the enhanced value of the land to his codefendant Thompson for the sum of $4,750; that the defendant Thompson, notwithstanding the advance in the price of said property and demand made upon him by plaintiff to dispose of said property for the purpose of realizing the profits which had accrued thereon, refused to sell the same, repudiated the partnership agreement, and declined to recognize any interest of the plaintiff in the transaction. While there is considerable conflict in the testimony, yet there is evidence sufficient to sustain the special findings of fact by the jury and the decree of the court thereon; and such findings of fact will not be disturbed in this court.

There are numerous assignments of error, but a determination of this cause requires an examination of but two material questions presented, to wit:

(1) Is a partnership formed by parol agreement for the purpose of dealing in lands void under the fifth subdivision of section 941, Rev. Laws 1910, which provides:

"Sec. 941. The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent. *** Fifth. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein. * * *"

And (2) should the court have rendered a personal judgment against defendant Thompson for a specific sum, prior to a sale of the land involved?

It will be noted that the partnership between the parties to this suit did not contemplate the purchase of real property for the purpose of permanent investment, or the conveyance of real estate from one of the parties to the firm or the members thereof, but that said partnership was formed for the purpose of dealing in land for speculation, and sharing equally the profits arising out of the purchase and sale of lands.

"It is generally held that agreements to share profits and losses arising from the purchase and sale of real estate are not contracts for the sale or transfer of interests in land and need not be in writing." (20 Cyc. 237.)

While a decision of the question presented in this cause is not without difficulty, and the holdings of the courts are not in harmony, it appears that the great weight of modern authority sustains the doctrine above quoted.

In *Chester v. Dickerson*, 54 N. Y. 1, 13 Am. Rep. 550, it is said:

"Most of the conflict in the authorities has arisen in controversies about the title to real estate after the dissolution of the partnership or the death of one of the partners. But suppose two persons, by parol agreement, enter into a partnership to speculate in lands, how do they come in conflict with the statute of frauds? No estate or interest in land has been granted, assigned, or declared. When the agreement is made no lands are owned by the firm, and neither party attempts to convey or assign any to the other. The contract is a valid one, and in pursuance of this agreement they go on and buy, improve and sell lands. While they are doing this, do they not act as partners and bear a partnership relation to each other? Within the meaning of the statute in such case neither conveys nor assigns any land to the other, and hence there is no conflict with the statute. The statute is not so broad as to prevent proof by parol of an interest in lands; it is simply aimed at the creation or conveyance of an estate in lands without a writing."

In *Pennybacker v. Leary*, 65 Iowa, 220, 21 N. W. 575, a case very similar to the one at bar, involving a partnership entered into by parol, the facts were stated by the court:

"By the terms of the agreement, plaintiff was to purchase the lands in defendant's name, who should advance the whole of the purchase money, and be allowed interest thereon at the rate of ten per cent. per annum. The lands, or the profits remaining, after deducting from the proceeds of the sale of the land the purchase money, interest thereon, and taxes, were to be divided equally."

And the court said:

"But defendant insists, and pleads as a defense in his answer, that, as the contract was for the purchase of an interest in lands, and was wholly oral, it cannot be enforced under the statute of frauds. The contract, to be truly ·stated, amounted to a parol agreement for the creation of a partnership, the object of which was to acquire and sell certain lands. The part of the agreement obligating the parties to purchase the land was but an incident of the contract of partnership. It provided for the subject and manner of investment of the capital of the firm. It was simply an agreement that the firm would buy the lands. By this agreement neither party bought or sold lands. It was not an agreement for the purchase and sale of lands. It was nothing more than the agreement that the firm should buy lands of another, which should be held as firm property. It was not, therefore, an agreement or contract under which an interest in or title to lands was attempted to be transferred. It simply provides what interest the parties shall have therein, when the lands shall be acquired, as provided by the contract. Surely, if two persons agree to enter into a partnership for the purchase and sale of dry goods, and therein specify the manner of the contribution of the capital of the firm, and the goods to be purchased, * * * the contract could not be regarded as creating or transferring any property or interest in the goods intended to be purchased. There is no distinction in principle between that case and this. We conclude that the contract in question is not within the contemplation of our statute of frauds, which provides that no evidence of a contract 'for the creation or transfer of any interest in lands, except leases for a term not exceeding one year,' is competent, 'unless it be in writing, and signed by the party to be charged, or by his lawfully authorized agent.' "

In *Von Trotha et al. v. Bamberger*, 15 Colo. 1, 24 Pac. 883, it is said in the syllabus:

"A verbal agreement to share the profits arising from the purchase and sale of real estate may be made independent of

any contract for an interest in the land itself. When so made, the agreement is not within the statute of frauds, and may become the foundation of an action for a money judgment, but not for a decree of specific performance affecting the title to the real estate."

In *McClintock v. Thweatt*, 71 Ark. 323, 73 S. W. 1093, a case almost identical as to the facts with the one at bar, it is said in the syllabus:

"An oral agreement between A. and B. that B. shall advance the money to buy certain lands for the purpose of selling them and dividing the profits between A. and B. is not within the statute of frauds."

And in the body of the opinion it is said:

"Is appellant entitled to the relief? This is denied, in part, upon the ground that the contract relied upon relates to an interest in lands, and is not in writing, as provided by the statute of frauds. The statute relied on provides: 'No action shall be brought * * * to charge any person upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them, * * * unless the agreement, promise or contract upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized. Sand. & H. Dig. sec. 3469. This action is not brought to charge appellee upon any contract for the sale of lands, or any interest in or concerning them. Appellant seeks to enforce a contract to divide the profits derived from the sales of land. The lands purchased by him and appellee were to be conveyed to appellee, and were by him to be conveyed to the persons to whom they sold the same, which has been done. The profits were to be divided equally between them."

In *Holmes v. McCray*, 51 Ind. 358, 19 Am. Rep. 735, it is held:

"It cannot be questioned that two or more persons may become partners in buying and selling land. There is nothing in the nature or essence of a partnership which requires that it should be confined to ordinary trade and commerce, or to dealings in personal property. * * * It is necessary to inquire whether a partnership, in reference to lands, can be formed and proved by parol. Upon this question there is considerable conflict in the authorities. On the one hand, it is claimed that a parol agreement for such a partnership would be within the

Thompson et al. v. McKee.

statute of frauds, which provides that no estate or interest in lands shall be created, assigned, or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, or declaring the same; and to this effect is the case of *Smith v. Burnham,* 3 Sumner, 435. On the other hand, it is claimed that such an agreement is not affected by the statute of frauds, for the reason that the real estate is treated and administered in equity as personal property, whether it be real or personal, for all the purposes of the partnership. A court of equity having full jurisdiction of all cases between partners touching the partnership property, it is claimed that it will inquire into, take an account of, and administer upon all the partnership property, and in such cases will not allow one partner to commit a fraud or a breach of trust upon his copartner by taking advantage of the statute of frauds; and to this effect are the following authorities: *Dale v. Hamilton,* 5 Hare, 369; *Essex v. Essex,* 20 Beavan, 449; *Bunnel v. Taintor,* 4 Conn. 568. A full discussion of the question is found in *Dale v. Hamilton;* and the reasoning and review of the cases there are quite satisfactory. The general doctrine is there laid down that: 'A partnership agreement between A. and B. that they shall be jointly interested in a speculation for buying, improving for sale, and selling lands may be proved without being evidenced by any writing, signed by or by the authority of, the party to be charged therewith within the statute of frauds; and, such an agreement being proved, A. or B. may establish his interest in land, the subject of the partnership, without such interest being evidenced by any such writing.' I am inclined to think this doctrine to be founded upon the best reason and the most authority. * * *

" 'Suppose two persons, by parol agreement, enter into a partnership to speculate in lands; how do they come in conflict with the statute of frauds? No estate or interest in land has been granted, assigned, or declared. When the agreement is made no lands are owned by the firm, and neither party attempts to convey or assign any to the other. The contract is a valid one, and in pursuance of this agreement they go on and buy, improve and sell lands. While they are doing this, do they not act as partners and bear a partnership relation to each other? Within the meaning of the statute in such case neither conveys nor assigns any land to the other, and hence there is no conflict with the statute. The statute is not so broad as to prevent proof by parol of an interest in lands; it is simply aimed at the creation or conveyance of an estate in lands without a writing.'

"As between the partnership and its vendors or vendees in the sale or purchase of lands, the statute in all cases would operate; but as between the partners themselves, when they are neither vendors nor vendees of one another, we cannot see how the statute can affect their agreements."

To the same effect see *Bates v. Babcock,* 95 Cal. 479, 30 Pac. 605, 16 L. R. A. 745, 29 Am. St. Rep. 133; *Wright v. Smith,* 105 Fed. 841, 45 C. C. A. 87; *McElroy v. Swope* (C. C.) 47 Fed. 386; *Bunnel v. Taintor,* 4 Conn. 572; *Coward v. Clanton,* 79 Cal. 23, 21 Pac. 359; *Richard v. Grinnell,* 63 Iowa, 44, 18 N. W. 668, 50 Am. Rep. 727; *Petrie v. Torrent,* 88 Mich. 43, 49 N. W. 1076; *Case v. Seger,* 4 Wash. 492, 30 Pac. 646; *Hirbour v. Reading,* 3 Mont. 15; *Fountain v. Menard,* 53 Minn. 443, 55 N. W. 601, 39 Am. St. Rep. 617; *Raymond v. Johnson,* 17 Wash. 232, 49 Pac. 492, 61 Am. St. Rep. 908.

That an ordinary partnership agreement is valid though not reduced to writing can scarcely be questioned. Nor can it be doubted that the settlement of the partnership accounts and a proper division of the assets among the members of the firm was an appropriate function of the court below sitting as a court of equity. It clearly appearing that the agreement between the parties did not have for its object the sale of real property or any interest therein by or to the plaintiff or defendants, or either of them, but contemplated only a division of the profits or losses growing out of the purchase and subsequent sale of the land to others, the same is not such a contract as is embraced within the provisions of the statute of frauds, and required to be in writing and signed by the party to be charged. We, therefore, conclude that a partnership agreement as in the instant case may be formed orally for the purpose of dealing in lands as well as for dealing in personal estate or engaging in any other occupation or business, it being, like any other partnership contract, an agreement to share in the profits and losses of the business, and the existence of such partnership and the interest of the members of the firm may be established by parol evidence.

However, the court erred in adjudging that the net interest of the plaintiff, McKee, in the profits of the transaction was the

sum of $5,000, and in rendering a personal judgment against the defendant Thompson in said sum, prior to a sale of the property as contemplated by the terms of the partnership agreement. The decree should have directed a sale of the land, and upon the consummation and return of said sale, that out of the funds arising therefrom the defendant Thompson be reimbursed for all the moneys advanced by him for the purchase price of said real estate, interest, and taxes, and, if then any of such funds remained as profits, the assets of said partnership business, that one-third thereof should be paid to the plaintiff, McKee, or, in the event there were no profits arising out of the transaction, that judgment be rendered against McKee for one-third of the losses, if any.

It is therefore ordered that the judgment of the trial court be so modified and the cause be remanded to that court for such further proceedings therein as are consistent with the views expressed herein.

All the Justices concur.